## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**THE UNITED STATES OF AMERICA**
**ex. rel. GORDON GRANT BACHMAN**

      **Plaintiffs,**

**vs.**                                             **CIVIL ACTION NO. 3:13-cv-0023-M**

**HEALTHCARE LIAISON PROFESSIONALS,**
**INC. d/b/a US PHYSICIAN HOME VISITS et. al.**

### RELATOR/PLAINTIFF'S MOTION FOR
### PARTIAL SUMMARY JUDGMENT

**LAW OFFICES OF JAMES R. TUCKER, P.C.**

**JAMES "RUSTY" TUCKER**
**LAW OFFICES OF JAMES R. TUCKER, P.C.**
**STATE BAR NO. 20272020**
**3100 DREXEL DRIVE**
**DALLAS, TX 75205**
**214-505-0097 (PHONE)**
**214-599-8874 (FACSIMILE)**
**rusty@rustytuckerlaw.com**

**ATTORNEY FOR RELATOR/PLAINTIFF**
**GORDON GRANT BACHMAN**

## TABLE OF CONTENTS

I.BACKGROUND AND PROCEDURAL HISTORY...............................................................1

II. FACTS...............................................................................................................................2

    A.  RELATOR'S ALLEGATIONS IN ORIGINAL COMPLAINT..............................2

    B.  RELATOR'S ALLEGATIONS IN THIRD AMENDED COMPLAINT..............3

        1.  Overview.............................................................................................3

        2.  Facts Pertaining to Count One (Health Care Fraud) of
           Third Amended Complaint by Ezukanma...........................................4

        3.  Facts Pertaining to Count Two (Conspiracy) of Third Amended
           Complaint Against Defendants Ezukanma, Etindi, Parcon and Gaines.............5

    C.  THE INDICTMENT................................................................................6

    D.  SUPERSEDING INDICTMENT OF EZUKANMA...................................8

    E.  THE PLEA AGREEMENTS OF ETINDI, PARCON AND
        GAINES AND CONVICTION OF EZUKANMA...................................8

III. LEGAL STANDARD..................................................................................... 10

IV. LEGAL ARGUMENT AND ANALYSIS...........................................................11

    A.  DEFENDANTS ETINDI, PARCON, AND GAINES PLED GUILTY TO
        CONSPIRACY TO COMMIT MEDICARE FRAUD.............................. 12

    B.  DEFENDANTS ARE PRECLUDED FROM CHALLENGING THE
        ESSENTIAL ELEMENTS OF THEIR CONVICTION AND/OR
        PLEA AGREEMENTS, WHICH FACTUALLY TRACK RELATOR'S
        ALLEGATIONS................................................................................ 13

V. RELATOR IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW .......15

VI. FALSE CLAIMS ACT DAMAGES.................................................................. 18

VII.CONCLUSION...........................................................................................20

<u>APPENDIX</u>

(Documents from Criminal Case, *U.S. v. Ezukanma et. al.* No. 3:15-CR-254-B (N.D. Tex.))

Indictment ................................................................................................... 001-13

Etindi Factual Resume ................................................................................. 014-18

Etindi Plea Agreement ................................................................................. 019-25

Etindi Judgment…………………………………………………………………...026-30

Parcon Factual Resume ................................................................................ 031-35

Parcon Plea Agreement ................................................................................036-42

Parcon Judgment…………………………………………………………………...043-49

Gaines Factual Resume ............................................................................... 050-56

Gaines Waiver of Indictment……………………………………………………...057-58

Gaines Superseding Information .................................................................059-71

Gaines Plea Agreement……………………………………………………………072-78

Parcon Plea Agreement ...............................................................................079-85

Gaines Judgment…………………………………………………………………... 086-92

Superseding Indictment of Defendant Ezukanma .......................................093-109

Jury Verdict as to Defendant Ezukanma…………………………………………110-111

Judgment as to Defendant Ezukanma…………………………………………… 112-119

<u>TABLE OF AUTHORITIES</u>

*Cases*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........ 10

*Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558,
71 S.Ct. 408, 95 L.Ed. 534 (1951) ........................................................................... 11

*S.E.C. v. Gruenberg*, 989 F.2d 977 (8th Cir. 1993) ................................................. 11

*Thomas v. Can-Do, Inc.*, 74 F.3d 1236 (5th Cir. 1995) ............................................11

*Trevino v. Celanese Corp.,* 701 F.2d 397 (5th Cir. 1983) ........................................ 10

*United States ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014) ................. 13

*United States ex rel. Farmer v. City of Houston,* 523 F.3d 333 (5th Cir. 2008) .......................13

*United States ex rel. Longhi v. United States,* 575 F.3d 458 (5th Cir. 2009) .......................... 13

*United States ex rel. Phi-Nga Jeannie Le v. Thaw and Kincaid,*
No. 3:12-CR-261-P (N.D. Tex.)...................................................................   16,17,18

*United States v. Boutte*, 907 F. Supp. 239 (E.D. Tex. 1995),
*aff'd*, 108 F.3d 332 (5th Cir. 1997) .........................................................15,16,17,18

*United States v. Ezukanma*, *et. al.* No. 3:15-CR-254-B (N.D. Tex.) (Boyle, J.)……………… 3

*United States v. Ezukanma*, __ Fed. App'x. __, 2018 WL 6264232 (5th Cir. 2018).…………10

*United States v. Killough,* 848 F.2d 1523 (11th Cir.1988) ........................................15

*United States v. Szilvagyi*, 398 F. Supp. 2d 842 (E.D. Mich. 2005) ..........................18

*United States v. Thomas,* 709 F.2d 968 (5th Cir. 1983), *cert. denied,* 475 U.S. 1014 (1986)  ..15

iii.

<u>TABLE OF AUTHORITIES</u> (Cont.)

**Statutes**

18 U.S.C. § 1347 ....................................................................................................................passim

18 U.S.C. § 24 ...............................................................................................................................7

31 U.S.C. §§ 3729-31 ......................................................................................................... passim

***Rules***

Fed. R. Civ. P. 56 ........................................................................................................................10

TO THE HONORABLE BARBARA M.G. LYNN, UNITED STATES DISTRICT JUDGE:

### RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff/Relator Gordon Grant Bachman moves the Court to enter summary judgment against defendants Noble Ezukanma, Ransom Etindi, Myrna Parcon a/k/a Merna Parcon, and Ben Gaines. Pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3731(e), defendants' related convictions and/or plea agreements in a parallel criminal proceeding identified below pleading guilty to health care fraud estop them from "from denying the essential elements" of the False Claims Act violations asserted here. Because defendants are precluded from contesting their civil liability in this action, Relator Bachman is entitled to summary judgment as a matter of law.

## I.
## <u>BACKGROUND AND PROCEDURAL HISTORY</u>

In particular, Relator seeks judgment on Counts One and Two of his *qui tam* Third Amended Complaint as to Defendant Ezukanma given that he was found guilty of both substantive violations of the False Claims Act as well as conspiracy to commit Medicare fraud. Count One asserts a cause of action under the False Claims Act (31 U.S.C. §§ 3729(a)(1) (1986) and 3729(a)(1)(A) (2009)) for the submission of false claims for payment to the United States. Count Two alleges a cause of action under the False Claims Act (31 U.S.C. §§ 3729(a)(3) (1986) and 3729(a)(1)(C) (2009)) for conspiracy to defraud the United States by getting a false claim paid. As to Defendants Etindi, Parcon, and Gaines, Relator seeks judgment on Count Two of his Third Amended Complaint given that they all pled guilty to and had Final Judgments entered finding them guilty of conspiracy to commit Medicare fraud.

On behalf of the United States, Relator Bachman filed his *qui tam* complaint on January 3, 2013 against defendants Noble Ezukanma, Ransom Etindi, Myrna Parcon a/k/a Merna Parcon, and Ben Gaines, among others. [Dkt. 1]. That Complaint has been amended three times, with Relator's

live pleading being the Third Amended Complaint filed on May 2, 2018 [Dkt. 159]. Relator alleged that these four Defendants submitted false claims to Medicare and engaged in a conspiracy to defraud Medicare. [Dkts. 1, 159].

## II.
## FACTS

### A.  RELATOR'S ALLEGATIONS IN ORIGINAL COMPLAINT

Relator alleged that Ezukanma, Etindi, Parcon and Gaines defrauded Medicare by conspiring with one another as set forth in Count Two of Relator's Original Complaint. Relator alleged as to these Defendants as follows:

90. Through the acts described above and otherwise, the Defendants entered into a conspiracy or conspiracies with each other and with unnamed co-conspirators to defraud the United States government by getting false and fraudulent claims allowed or paid. Defendants have also conspired with each other and with unnamed co-conspirators to omit disclosing or to actively conceal facts which, if known, would have reduced government obligations to the Defendants. Defendants have taken substantial steps in furtherance of those conspiracies by submitting false claims for payment or approval that contained these improper charges, and by directing their agents and personnel not to disclose and/or to conceal their fraudulent practices and those of their co-Defendants, as well.

91. The Medicare program, unaware of Defendants' conspiracies or the falsity of the records and statements, has paid claims to the Defendants, and as a result thereof, has paid hundreds of millions of dollars in Medicare reimbursements that it would not otherwise have paid. Furthermore, because of the false records, statements, claims, and omissions caused to be made by Defendants, the United States has not recovered Medicare funds from the Defendants that otherwise would have been recovered.

92. The various Defendants combined, conspired, and agreed together to defraud the United States by knowingly submitting False Claims and billing Medicare for the purpose of getting the False Claims paid, or allowed, and committed other overt acts as set forth above in furtherance of that conspiracy. This conspiracy caused the United States government to pay hundreds of millions and perhaps billions of dollars for False Claims that should not have been paid to the Defendants, for which damages the Relators seek recovery thereof. [Dkt. 1, pars. 90-92].

In addition to the conspiracy allegations, Relator alleged in Count One substantive violations of the FCA by these Defendants as follows:

> 86. The False Claims submitted by the Defendants in violation of THE FEDERAL FALSE CLAIMS ACT and 42 U.S.C. Section 1329 that Relator is aware of include, but are not limited to, the following:

> (k) Certifying to Medicare that patients of USPHV, AGood, and Essence were "home bound" when they were not home bound per Medicare guidelines… [Dkt. 1, par. 86].

## B.  RELATOR'S ALLEGATIONS IN THIRD AMENDED COMPLAINT

### 1.  Overview

In Plaintiff's current live pleading (Third Amended Complaint), Relator alleged as to Defendants Ezukanma, Etindi, Parcon and Gaines (among others), this case involved one of the largest cases of home health care fraud in the history of the United States as set forth in the press release issued by the U.S. government. Relator described how the filing of his civil qui tam lawsuit resulted in a criminal proceeding against these four Defendants as follows:

> 37. …After Relator came forward and reported this fraud to the federal government and filed this lawsuit, the United States investigated the actions of the Defendants thoroughly. Based upon the information provided by Relator to the government, a raid (hereinafter "Raid") of the corporate headquarters of Defendants USPHV and former Defendants Essence and A-Good took place on or about May 14, 2014, by the U.S. Attorney's office in conjunction with the FBI, HHS Office of Inspector General, and possibly other federal and/or State agencies.

> 38. Just days prior to the Raid (which Relator had no idea was going to occur), Relator met with representatives of several government agencies, and gave a detailed account of what documents could be found where, where the flash drives with evidence would be stored, which computers belonged to whom and where they were located, and provided a diagram of the facilities that were shortly thereafter the subject of the Raid. During this Raid thousands of pages of documents were confiscated, and all computers and data (flash drives, etc.) in the company were confiscated as well in connection with same. [Dkt. 159, pars. 37-38].

As a result of Relator's *qui tam* case, as well as the seizure of evidence Relator directed them to in the raid, the Government initiated a criminal investigation and pursued significant criminal charges against defendants Ezukanma, Etindi, Parcon and Gaines (among others). *United*

*States v. Ezukanma*, *et. al.* No. 3:15-CR-254-B (N.D. Tex.) (Boyle, J.) (hereinafter "*Criminal Case*"). As demonstrated below, the criminal wrongdoing alleged by Ezukanma, Etindi, Parcon and Gaines stemmed from and related directly to the allegations made by Relator Bachman. The United States notified the Court on February 22, 2016 that it was not intervening in the *qui tam* case. The Court ordered the Complaint unsealed and served on the defendants. *Non-Intervention Order* (Dec. 12, 2013) [Dkt. 29].

### 2. Facts Pertaining to Count One (Health Care Fraud) of Third Amended Complaint by Ezukanma

Similar to the allegations set forth in the Indictment described below, Relator alleged that Defendant Ezukanma had committed health care fraud in violation of the FCA by signing Form 485 certifications for home health care without ever seeing the patients:

> 48. Defendant Ezukanma was the so-called "medical director" of USPHV. During the time period applicable to this action he owned a very profitable pulmonary practice in Fort Worth, Texas which is where his primary practice was located. He signed thousands of Form 485 certifications on behalf of patients of USPHV without seeing any of these patients, yet an overwhelming majority of the patients were not "homebound" per Medicare guidelines. [Dkt. 159, par. 48].

> 51. The way the procedure worked for Defendant Parcon would direct her staff to send on behalf of USPHV, AGood, and Essence, UNEC and Medpro rafts of paperwork to Dr. Ezukanma and/or Dr. Etindi to sign in exchange for periodic payments by Defendant Parcon and/or USPHV. They lent their signatures for use of his billing information and a check every month from Defendant Parcon.  Ezukanma and Dr. Etindi were the quintessential "robo-signers" for a fee so that USPHV, AGood, Essence, UNEC and Medpro could submit claims for "homebound" care to Medicare….[Dkt. 159, par. 51].

> 52. Without seeing the patient, Defendant Ezukanma obviously had no idea whether these patients he was "certifying" were "homebound" per the Medicare guidelines set forth above…. [Dkt. 159, par. 52].

In Count One of the Third Amended Complaint, Relator made substantial allegations of the extent of Ezukanma's health care fraud resulting in a substantive violation of the FCA. See,

*inter alia,* Dkt. 159, pars. 128-135. Specifically, again very similar to the language of the Superseding Indictment described below, Relator alleged as follows:

> 131. If the U.S. Government had known that Defendants Ezukanma, Ezuknma, M.D., and/or Etindi were billing Medicare for services rendered to …home health care patients knowing that Defendants Ezukanma, Ezuknma, M.D., and/or Etindi billed code 99354 on approximately 98% of the approximate 27,000 patients they billed Medicare, thereby representing to Medicare that they had spent 90 minutes with each patient when they knew they had only spent on average 15-20 minutes with each patient, Medicare would not have paid those claims. Said Defendants failed to disclose to the United States Government these material facts that would have resulted in substantial repayments by the Defendants to the United States Government and/or the payments not being approved by Medicare in the first instance. In this regard, Defendants Ezukanma…(i) knowingly presented, or caused to be presented, to the United States Government, false or fraudulent claims for payment or approval; (ii) knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States Government; and (iii) knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States Government.

### 3. Facts Pertaining to Count Two (Conspiracy) of Third Amended Complaint Against Defendants Ezukanma, Etindi, Parcon and Gaines

Again, the allegations of Conspiracy to commit Medicare fraud in the Third Amended Complaint are almost identical to the allegations in the Indictment as described below as it pertains to defendants Ezukanma, Etindi, Parcon and Gaines. These allegations are set forth in great detail in Count Two of the Third Amended Complaint. See, *inter alia,* Dkt. 159, pars. 163-171. Excerpts from some of the allegations follow:

> 163. Defendants Ezukanma, Ezuknma, M.D., Etindi UNEC and/or Medpro (sometimes hereinafter collectively referred to as "Doctor Billing Entities") and USPHV and Parcon were engaged in a conspiracy, the purpose of which was to defraud Medicare by submitting False Claims, to bill Medicare for services rendered to patients of…home health agencies …knowing that patients for which billings were submitted had been improperly certified as being "homebound" by Defendants Ezukanma and Etindi. Said Defendants failed to disclose to the United States Government these material facts that would have resulted in substantial repayments by the Defendants to the United States Government…[Dkt. 159, par. 163].

> 164. The purpose of the conspiracy was to allow the Doctor Billing Entities and Home Health Care Agencies to submit false and fraudulent claims to Medicare, a healthcare

benefit program as defined in 18 U.S.C. Sec. 24(b), for physician house call visits and home health care, respectively….[Dkt. 159, par. 164].

165. Regarding the manner and means of the conspiracy, the purpose for which was to defraud Medicare, the Home Health Care Agencies and the Doctor Billing Entities essentially reversed the home health process. Typically, a physician initiates the home health care process by ordering that a patient recieve home health care after (a) observing the patient in a face to face encounter, and (b) believed that the patient met the standards for receiving home health care, and (c) signed a Form 485 certification form ordering home health care for each such patient. [Dkt. 159, par. 165]….

169. Defendants Ezukanma, Ezuknma, M.D., and/or Etindi were engaged in a conspiracy to bill Medicare for services rendered to patients of …home health care patients at an alarming rate! Defendants Ezukanma, Ezuknma, M.D., and/or Etindi billed code 99354 on approximately 98% of the approximate 27,000 patients they billed Medicare, thereby representing to Medicare that they had spent 90 minutes with each patient when they knew they had only spent on average 15-20 minutes with each patient…Said Defendants failed to disclose to the United States Government these material facts that would have resulted in substantial repayments by the Defendants to the United States Government and/or the payments not being approved by Medicare in the first instance. . [Dkt. 159, par. 169]….

170. Defendants USPHV, Gaines, Parcon, Ezukanma, and Etindi engaged in a conspiracy, the purpose of which was to defraud Medicare by submitting False Claims, to make it appear as though USPHV, AGood, and Essence were three (3) separate and independent entities when they were billing Medicare when in fact they were operated as one global entity. The same employees often worked for and were paid by all three (3) entities….[Dkt. 159, par. 170]….

171. Had Medicare known about the true ownership and improper relationship between USPHV, AGood, and Essence, Medicare would not have allowed any of them to enroll in the Medicare program, much less pay thousands of fraudulent Medicare claims submitted over the years. Defendants USPHV, AGood, and Essence, received payments from Medicare for these false or fraudulent claims during the time periods specified hereinabove that it should not have received had the facts of this conspiracy been known by or disclosed to the Government. [Dkt. 159, par. 171]….

## C.THE INDICTMENT

In the Criminal Case, an indictment as to defendants Ezukanma, Etindi, Parcon and Gaines was filed on June 10, 2015. *Appendix* ("App.") 001-14. The Indictment charged Defendants Ezukanma, Etindi, Parcon and Gaines with conspiracy to commit health care fraud in violation of 18 U.S.C. Sections 1347 and 1349.  Defendants Etindi, Parcon and Gaines reached plea agreements

with the U.S. Government, while Defendant Ezukanma elected to go to trial and was found guilty

by the jury as explained in detail hereinbelow.

Similar to the allegations in the Original and Third Amended Complaint set forth above,

the Indictment stated as follows:

"…Defendants Noble Ezukanma, Myrna Parcon, Ransome Etindi….and Ben Gaines, did
knowingly, intentionally, and willfully combine , conspire, confederate, and agree with
each other….to commit certain offenses against the United States….(a) to defraud
Medicare, a health care benefit program as defined in 18 U.S.C. Sec. 24(b); and (b) to
obtain money and property owned by and under the custody and control of Medicare, a
health care benefit program as defined in 18 U. S. C. Sec. 24(b), by means of materially
false pretenses, representations and promises, in connection with payments for health
care services, namely physician house call visits and home health care, in violation of 18
U.S.C. Sec. 1347…..[Dkt. 3, par. 16, App. at 006]….

USPHV received thousands of requests from HHA's, including A Good and Essence, to
certify and recertify Medicare beneficiaries for home health services, regardless of the
beneficiares homebound status. Most if not all of USPHV patients were improperly
generated by referrals from HHAs. As part of the fraudulent scheme and contrary to
Medicare regulations, USPHV, A Good, Essence, and all the other participating HHAs
reversed the home health process. HHAs requested home health rather than home health
being ordered by a physician who (1) had face-to-face contact treating the beneficiary, (2)
believed the beneficiary eligible for the service, and (3) intended the beneficiary receive
medical benefit from home health care. Once a HHA referred a patient and requested a
doctor certify or recertify the beneficiary for home health care, defendants Myrna
Parcon… directed USPHV employees to schedule the beneficiary for a physician home
visit that would be billed to Medicare. [Dkt. 3, par. 20, App. at 007]….

Noble Ezukanma, Myrna Parcon, Ransome Etindi… and Ben Gaines engaged in
fraudulently certifying beneficiaries for home health services. HHAs, including Agood at
the direction of Myrna Parcon and Ben Gaines, …would provide certifications, or
Medicare Form 485s, to USPHV for physician signatures to certify Medicare beneficiaries
for home health care regardless if the beneficiary was eligible to received the benefits.
Over 97% of USPHV Medicare patients received home health care---whether they
needed it or not. [Dkt. 3, par. 24, App. at 009]…

Noble Ezukanma and Ransome Etindi would sign and certify a form 485 for each
beneficiary the HHA requested, regardless of the homebound status of the beneficiary.
Noble Ezukanma and Ransome Etindi signed the certifications, often without any
knowledge of the patient or the patient's medical condition. Because Noble Ezukanma
and Ransome Etindi had no actual knowledge of the patient's medical condition,
certifying a patient as homebound was impossible—therefore, the defendants certified the
Form 485s fraudulently. By fraudulently certifying the Form 485, the defendants, Nopble

**RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT**                    Page 7

Ezukanma, Myrna Parcon, Rnsome Etindi… and Ben Gaines allowed HHAs, including A Good and Essence, to bill Medicare for home health services—most of which was not needed. These false 485 certifications caused Medicare to pay for fraudulent home health services in an amount over $40 Million." [Dkt. 3, par. 25, App. at 010].

### D.SUPERSEDING INDICTMENT OF EZUKANMA

Before Defendant Ezukanma went to trial in 2017, the Government obtained a Superseding Indictment of Ezukanma in advance of trial. [Dkt. 203, App. at 093-109]. In addition to retaining Count One of the original Indictment, the Government added 6 addition Counts of Health Care Fraud (Counts 2-7) in violation of 18 U.S.C. Sec. 1347 and 2. The additional Counts alleged that Ezukanma submitted or caused to be submitted claims for reimbursement to Medicare knowing that those claims were materially false and fraudulent. As to each patient identified in Counts Two through 7, it was alleged that Ezukanma falsely represented to Medicare that he had performed a physician home visit by spending a minimum of 90 minutes with each patient when in fact he had not performed "any patient examination and did not render any services" to each of those 6 patients. [Dkt 203, par. 27; App. at 102-107].

### E.THE PLEA AGREEMENTS OF ETINDI, PARCON AND GAINES AND CONVICTION OF EZUKANMA

A Factual Resume was filed pertaining to Defendant Etindi on April 8, 2016. [Dkt. 89; App. at 014-18]. A Plea Agreement was also reached with Defendant Etindi on that date whereby said Defendant pled guilty to Count One of the Indictment--conspiracy to commit Medicare fraud. [Dkt. 90; App.at 019-25]. The stipulated facts concerning the manner and means of the conspiracy were set forth in great detail in the factual resume of Defendant Etindi, which facts closely mirror those of Relator in his Original and subsequent amended complaints. A Judgment was later entered pertaining to Defendant Etindi on August 21, 2017 whereby Defendant Etindi was found guilty of conspiracy to commit health care fraud in violation of 18 U.S.C. Section 1347 and 1349. [Dkt.

333; App. at 026-30].  He was sentenced to a period of incarceration of 30 months and ordered to pay restitution of $18,309,171.21 jointly and severally with Defendants Parcon and Gaines, among other defendants. [Dkt. 333; App. at  027-29].

A Factual Resume was filed pertaining to Defendant Parcon on November 4, 2016. [Dkt. 144; App. at 031-35]. A Plea Agreement was also reached with Defendant Parcon on that date whereby said Defendant pled guilty to Count One of the Indictment—conspiracy to commit Medicare fraud. [Dkt.143; App.at 036-042]. The stipulated facts concerning the manner and means of the conspiracy were set forth in great detail in the factual resume of Defendant Parcon, which facts closely mirror those of Relator in his Original and subsequent amended complaints. A Judgment was entered pertaining to Defendant Parcon on August 21, 2017 whereby Defendant Parcon was found guilty of conspiracy to commit health care fraud in violation of 18 U.S.C. Sections 1347 and 1349. [Dkt. 331; App. at 043-049]. She was sentenced to a period of incarceration of 120 months and ordered to pay restitution of $51,497,930.87. [Dkt. 333; App. at 047-49].

A Factual Resume was filed pertaining to Defendant Gaines on November 4, 2016. [Dkt. 148; App. at 050-056]. A Waiver of Indictment was filed and a Plea Agreement was also reached with Defendant Gaines on that date whereby said Defendant pled guilty to Count One of the Indictment—conspiracy to commit Medicare fraud. [Dkts. 147, 149; App. at 072-78]. Superseding Information was filed that day in connection with same. [Dkt.146; App. at 059-071]. The stipulated facts concerning the manner and means of the conspiracy were set forth in great detail in the factual resume of Defendant Gaines, which facts closely mirror those of Relator in his Original and subsequent amended complaints. A Judgment was entered pertaining to Defendant Gaines on August 22, 2018 whereby Defendant Gaines was found guilty of conspiracy to commit health care

fraud in violation of 18 U.S.C. Sections 1347 and 1349. [Dkt. 464; App. at 086-092]. He was sentenced to a period of incarceration of 60 months and ordered to pay restitution of $9,323,957.60 [Dkt. 464, App. at 090-92].

As reflected above, Defendant Ezukanma elected to go to trial. Before the trial a Superseding Indictment was filed on February 7, 2017, alleging conspiracy to commit health care fraud in violation of 18 U.S.C. Sections 1347 and 1349, as well as health care fraud in violation of 18 U.S.C. Sections 1347 and 2. [Dkt. 203; App. at 103-109]. On March 24, 2017, the jury found Defendant Ezukanma guilty on all Counts alleged in the Superseding Indictment for health care fraud and conspiracy to commit health care fraud. [Dkt. 256; App.at 110-111].  A Judgment was entered as to Defendant Ezukanma on September 14, 2017 whereby the Defendant was sentenced to 200 months of incarceration and ordered to pay restitution of $34,003,151.24. [Dkt. 363; App. at 112-119]. Defendant Ezukanma appealed his conviction and on November 28, 2018, the United States Court of Appeals for the Fifth Circuit affirmed this court's judgment. *See United States v. Ezukanma*, __ Fed. App'x. __, 2018 WL 6264232 (5th Cir. 2018).

## III.

## <u>LEGAL STANDARD</u>

The Court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must consider all evidence in the light most favorable to the party resisting the motion. *Trevino v. Celanese Corp.,* 701 F.2d 397, 407 (5th Cir. 1983). An issue as to a material fact is genuine if there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. Only disputes over

facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Id.*

## IV.
## LEGAL ARGUMENT AND ANALYSIS

Because there is no genuine issue as to any material fact and the defendants' criminal convictions and/or plea agreements legally preclude them from challenging their civil liability under the False Claims Act, Relator Bachman is entitled to summary judgment as a matter of law. The False Claims Act provides:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730. 31 U.S.C. § 3731(e).

It is well established that "a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding ... [provided the questions were] 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568–69, 71 S.Ct. 408, 413–14, 95 L.Ed. 534 (1951); *Thomas v. Can-Do, Inc.*, 74 F.3d 1236 (5th Cir. 1995) (collateral estoppel applies in criminal and civil cases to bar "relitigation of an issue actually and necessarily decided in a prior action") (citations omitted); *S.E.C. v. Gruenberg*, 989 F.2d 977, 978 (8th Cir. 1993). The essential elements of Defendants Etindi, Parcon and Gaines criminal pleas are the same as those that are relevant to their FCA violations. Further, the essential elements of the guilty verdict and Judgment as to Defendant Ezukanma are the same as those that are relevant to his FCA violations. The criminal proceeding determined as a matter of law the predicate facts necessary to find violations of the False Claims

Act. As a result, defendants are prevented from denying the allegations of health care fraud detailed in Relator's Original and Third Amended Complaints.

The elements essential to a conviction for the commission of health care fraud are (1) a person "knowingly and willfully executes, or attempts to execute, a scheme or artifice" (2) "to defraud any health care benefit program" or (3) "to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program." 18 U.S.C. § 1347.   Defendants Etindi, Parcon and Gaines voluntary pled guilty to agreeing to commit crimes against the United States by knowingly and willfully entering into a conspiracy to defraud health care benefit programs and obtain by false pretenses money under the control of the health care benefit program. Specifically, they admitted to entering into a conspiracy to submit false health care claims as set forth in Count One of the Indictments against them.

## A.  DEFENDANTS ETINDI, PARCON, AND GAINES PLED GUILTY TO CONSPIRACY TO COMMIT MEDICARE FRAUD

As to Defendant Ezukanma, on March 24, 2017, the jury found Defendant Ezukanma guilty on all Counts alleged in the Superseding Indictment for health care fraud and conspiracy to commit health care fraud. [Dkt. 256, App. at 110-111].  A Judgment was entered as to Defendant Ezukanma on September 14, 2017 whereby the Defendant was sentenced to 200 months of incarceration and ordered to pay restitution of $34,003,151.24. [Dkt. 363, App. at 117-119]. Defendant Ezukanma appealed his conviction and which was upheld on appeal as reflected above.

Defendants' inability to challenge the essential elements of their convictions and/or plea agreements and judgments in connection with same, prevents them from denying civil liability under the False Claims Act. Under the FCA, the Fifth Circuit has adopted four elements that a relator must satisfy in order to state a cause of action under the FCA generally: (1) a false statement

or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (*i.e.,* that involved a claim). *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014), *citing United States ex rel. Longhi v. United States,* 575 F.3d 458, 467 (5th Cir. 2009) (internal quotation marks omitted).

To prove a False Claims Act conspiracy, "a relator must show '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'" *Id.* at 193, *quoting United States ex rel. Farmer v. City of Houston,* 523 F.3d 333, 343 (5th Cir. 2008). Presentment of a claim for payment "need not be proven nor pled to prevail on a False Claims Act conspiracy charge." *Id.* Under the FCA, defendants' wrongdoing must have been done "knowingly." 31 U.S.C. § 3729(a), (b).

The elements of the False Claims Act violations asserted in Counts One and Two of Relator's Third Amended Complaint are consistent with the essential elements of Defendant Ezukanma's criminal conviction for conspiracy to commit health care fraud. Likewise, the elements of the False Claims Act violations asserted in Count Two of Relator's Complaint and Third Amended Complaint are consistent with the essential elements of the agreements to plead guilty by Defendants Etindi, Parcon, and Gaines.

### B. DEFENDANTS ARE PRECLUDED FROM CHALLENGING THE ESSENTIAL ELEMENTS OF THEIR CONVICTION AND/OR PLEA AGREEMENTS, WHICH FACTUALLY TRACK RELATOR'S ALLEGATIONS

Factually, Relator's complaint documents the same facts upon which defendants' convictions are based. Relator alleged that Defendants Ezukanma, Etindi, Parcon and Gaines were engaged in a conspiracy to defraud Medicare. Specifically, Relator alleged that Defendants

Ezukanma, Ezuknma, M.D., Etindi UNEC and/or Medpro (sometimes hereinafter collectively referred to as "Doctor Billing Entities") and USPHV and Parcon were engaged in a conspiracy, the purpose of which was to defraud Medicare by submitting False Claims, to bill Medicare for services rendered to patients of…home health agencies …knowing that patients for which billings were submitted had been improperly certified as being "homebound" by Defendants Ezukanma and Etindi. [Dkt. 159, par. 163]. Relator further alleged that Defendants USPHV, Gaines, Parcon, Ezukanma, and Etindi engaged in a conspiracy, the purpose of which was to defraud Medicare by submitting False Claims, to make it appear as though USPHV, AGood, and Essence were three (3) separate and independent entities when they were billing Medicare when in fact they were operated as one global entity. [Dkt. 159, par. 170].

Similarly, the Indictment alleging conspiracy by Defendants Noble Ezukanma, Myrna Parcon, Ransome Etindi….and Ben Gaines stated that they "did knowingly, intentionally, and willfully combine , conspire, confederate, and agree with each other….to commit certain offenses against the United States….(a) to defraud Medicare, a health care benefit program as defined in 18 U.S.C. Sec. 24(b); and (b) to obtain money and property owned by and under the custody and control of Medicare, a health care benefit program as defined in 18 U. S. C. Sec. 24(b), by means of materially false pretenses, representations and promises, in connection with payments for health care services, namely physician house call visits and home health care, in violation of 18 U.S.C. Sec. 1347…..[Dkt. 3, par. 16, App. at 006]…."

The Indictment further set forth the following allegations which again are very similar to Relator's allegations in his Complaint and Third Amended Complaint:

> Noble Ezukanma, Myrna Parcon, Ransome Etindi… and Ben Gaines engaged in fraudulently certifying beneficiaries for home health services. HHAs, including Agood at the direction of Myrna Parcon and Ben Gaines, …would provide certifications, or Medicare Form 485s, to USPHV for physician signatures to certify Medicare beneficiares

for home health care regardless if the beneficiary was eligible to received the benefits. Over 97% of USPHV Medicare patients received home health care---whether they needed it or not. [Dkt. 3, par. 24, App. at 010]…

Noble Ezukanma and Ransome Etindi would sign and certify a form 485 for each beneficiary the HHA requested, regardless of the homebound status of the beneficiary. Noble Ezukanma and Ransome Etindi signed the certifications, often without any knowledge of the patient or the patient's medical condition. Because Noble Ezukanma and Ransome Etindi had no actual knowledge of the patient's medical condition, certifying a patient as homebound was impossible—therefore, the defendants certified the Form 485s fraudulently. By fraudulently certifying the Form 485, the defendants, Nopble Ezukanma, Myrna Parcon, Rnsome Etindi… and Ben Gaines allowed HHAs, including A Good and Essence, to bill Medicare for home health services—most of which was not needed. These false 485 certifications caused Medicare to pay for fraudulent home health services in an amount over $40 Million." [Dkt. 3, par. 25, App. at _____].

## V.

## RELATOR IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW

Based on defendants' Plea Agreements and criminal conviction, the impact of the FCA's statutory estoppel provision (31 U.S.C. § 3731(e)), and common law principles of estoppel, defendants are precluded from challenging their civil liability under the FCA. The facts in this case are similar to *United States v. Boutte*. In *Boutte*, the United States contended that a guilty verdict in a criminal trial determined as a matter of law the predicate facts necessary to find the defendant, Boutte, liable for committing twenty-three violations of the False Claims Act. *United States v. Boutte*, 907 F. Supp. 239, 241 (E.D. Tex. 1995), *aff'd*, 108 F.3d 332 (5th Cir. 1997). The district court noted that "[c]ollateral estoppel is particularly appropriate when the prior proceeding was a criminal action." *Id.* at 241, *citing United States v. Thomas*, 709 F.2d 968, 972 (5th Cir. 1983), *cert. denied*, 475 U.S. 1014 (1986) and *United States v. Killough*, 848 F.2d 1523, 1528 (11th Cir. 1988).

Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, "a conviction is conclusive as to an issue arising against the criminal

defendant in a subsequent civil action." *Boutte*, 907 F. Supp. at 241, *quoting Thomas,* 709 F.2d at

972. The court ruled that the plaintiff had shown as a matter of law why it should prevail against

the defendant, granted summary judgment under the False Claims Act and awarded treble the

amount of the government's loss. *Boutte,* 907 F. Supp. at 242.

> On appeal, the Fifth Circuit affirmed, noting:

> The Government correctly asserts, and the court below agreed, that Boutte is collaterally
> estopped from challenging the facts underlying the 23 counts for which he has already
> been convicted. The Government is not required to reprove the same facts especially
> when, as here, a lower standard of proof applies to the civil violations under the False
> Claims Act. 31 U.S.C. § 3731(d).

*United States v. Boutte,* 108 F.3d 332 (5th Cir. 1997). The Circuit Court explained why summary

judgment was appropriate:

> While a prior criminal conviction . . . might not, without more, collaterally estop a
> defendant in a subsequent civil suit under the False Claims Act, in the instant case the
> court correctly held on summary judgment that the False Claims Act applied to all
> counts. The criminal indictment alleged that the false statements were part of a scheme to
> defraud the government, and were submitted in order to ensure continued federal funding,
> and there was uncontradicted testimony that the false statements were relied on by the
> Government in deciding whether to fund defendant's program. In addition to the facts
> underlying the convictions, the evidence of payment to Boutte based on his false
> statements support the summary judgement [sic].

*Id.* As was the case in *Boutte*, the stipulated facts from defendants' plea agreements and criminal

conviction here confirm that defendants fraudulently obtained payments from government-funded

health insurance programs by (a) submitting false claims through a scheme to defraud the United

States that resulted in violations of the False Claims Act as to Defendant Ezukanma; and (b) a

conspiracy to submit false claims by Defendants Ezukanma, Etindi, Parcon, and Gaines.

> In a recent case from the Northern District of Texas in which a Final Judgment was entered

in April of 2016, *United States Ex Rel. Phi-Nga Jeannie Le v. Thaw and Kincaid*, No. 3:12-CR-

261-P (N.D. Tex.), the Court followed the reasoning of *Boutte* and held that the Relator in that

case was entitled to Judgment as a matter of law based upon the Plea Agreements in the criminal case. [Dkts. 53, 68].  In her Motion for Summary Judgment, the Relator argued to the court that the amount of damages assessed by the criminal court should be trebled, citing Boutte, stating as follows:

> Thaw and Kincaid pled guilty to Conspiracy to Commit Healthcare Fraud. The Court in the Criminal Case was required to determine the total amount of the victim's loss when ordering restitution. 18 U.S.C. § 3664; *Boutte*, 907 F. Supp. at 242 (assessing treble FCA damages based on restitution order in related criminal case); *United States v. Szilvagyi*, 398 F. Supp. 2d 842, 849-50 (E.D. Mich. 2005) (same). Judge Solis determined that the loss suffered by United States is $702,279.64 and ordered Thaw and Kincaid, jointly and severally, to pay that amount as restitution. *App.* 087, 093. Under the FCA, Dr. Le is entitled to recover on behalf of the United States treble damages of $2,106,838.92, plus attorneys' fees, expenses and costs incurred on her behalf. Dr. Le leaves the imposition of civil penalties to the discretion of the Court. [Dkt. 41, p. 24].

Judge Solis agreed, and entered an Order [Dkt. 53] and Final Judgment [Dkt. 68] awarding the Relator treble damages of $2,106,838.92 as requested in the Motion for Partial Summary Judgment, plus attorneys' fees and expenses.

Relator's civil action and the defendants' criminal judgment and plea agreements plainly stem from the same conduct. Defendant Ezukanma was convicted by a jury and a Judgment was entered finding that he knowingly, intentionally and willfully committed health care fraud and conspired to defraud Medicare. Defendants Etindi, Parcon, and Gaines entered into Plea Agreements with each admitting they conspired to defraud Medicare in connection with fraudulent health care services. There is no dispute as to the facts establishing the conspiracy to which they entered pleas of guilty, which are based on the same facts as this civil FCA proceeding. When there are no genuine issues as to any material fact, summary judgment should be awarded to the plaintiff. Had this case not been filed, there would have been no criminal trial as the facts were gathered for the Indictments based on information provided by Relator to the Government.

# VI.

## FALSE CLAIMS ACT DAMAGES

The False Claims Act provides that persons violating the Act are liable "for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person."31 U.S.C. § 3729(a)(1). The Act also requires defendants to pay the attorneys' fees, expenses and costs incurred on behalf of the relator. *Id.* at 3730(d)(2). Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, civil penalties under the False Claims Act ranged from $5,500 to $11,000 per false claim at all times relevant to this action. 28 C.F.R. § 85.3(9).

The Court in the Criminal Case was required to determine the total amount of the victim's loss when ordering restitution when entering Judgments against them. 18 U.S.C. § 3664; *Boutte*, 907 F. Supp. at 242 (assessing treble FCA damages based on restitution order in related criminal case); *United States v. Szilvagyi*, 398 F. Supp. 2d 842, 849-50 (E.D. Mich. 2005) (same); *United States Ex Rel. Phi-Nga Jeannie Le v. Thaw and Kincaid*, No. 3:12-CR-261-P (N.D. Tex.) (same). Accordingly, summary judgment should be issued against these four Defendants in the following amounts:

### Noble Ezukanma

Judge Boyle determined the loss suffered by United States as a result of the criminal actions of Defendant Ezukanma and ordered him to pay restitution of $34,003,151.24. Under the FCA, Relator is entitled to recover on behalf of the United States treble damages of $102,009,454.00 plus attorneys' fees, expenses and costs incurred on his behalf. Accordingly, Relator seeks summary Judgment against Defendant Ezukanma for total recovery in the amount of $102,009,454.00. Given the substantial nature of the above amounts, Relator will waive any claim

for additional civil penalties, as well as any claim for attorneys' fees, expenses and costs incurred on his behalf.

### Ransome Etindi

Judge Boyle determined the loss suffered by United States as a result of the criminal actions of Defendant Etindi and ordered him to pay restitution of $18,309,171.21. Under the FCA, Relator is entitled to recover on behalf of the United States treble damages of $54,927,513.60, plus attorneys' fees, expenses and costs incurred on her behalf. Accordingly, Relator seeks Summary Judgment against Defendant Etindi for a total recovery in the amount of $54,927,513.60. Given the substantial nature of the above amounts, Relator will waive any claim for additional civil penalties, as well as any claim for attorneys' fees, expenses and costs incurred on his behalf.

### Myrna Parcon

Judge Boyle determined the loss suffered by United States as a result of the criminal actions of Defendant Gaines and ordered him to pay restitution of $51,497,930.87. Under the FCA, Relator is entitled to recover on behalf of the United States treble damages of $154,493,792, plus attorneys' fees, expenses and costs incurred on his behalf. Accordingly, Relator seeks summary Judgment against Defendant Parcon for total recovery in the amount of $154,493,792. Given the substantial nature of the above amounts, Relator will waive any claim for additional civil penalties, as well as any claim for attorneys' fees, expenses and costs incurred on his behalf.

### Ben Gaines

Judge Boyle determined the loss suffered by United States as a result of the criminal actions of Defendant Gaines and ordered him to pay restitution of $9,323,957.60. Under the FCA, Relator is entitled to recover on behalf of the United States treble damages of $27,971,872.80, plus attorneys' fees, expenses and costs incurred on his behalf. Accordingly, Relator seeks summary

Judgment against Defendant Gaines for total recovery in the amount of $27,971,872.80. Given the substantial nature of the above amounts, Relator will waive any claim for additional civil penalties, as well as any claim for attorneys' fees, expenses and costs incurred on his behalf.

## VII.
## CONCLUSION

Relator's *qui tam* complaint detailed the fraud perpetrated by the defendants. The fraudulent schemes detailed by Relator are the same transactions for which criminal proceedings resulted in admissions of guilt by the defendants. Criminal judgments have been rendered, and prison sentences and restitution ordered. The essential elements of defendants' criminal offenses form the basis for civil liability under the False Claims Act. The defendants are estopped from denying liability.

Therefore, Relator is entitled to summary judgment under the False Claims Act on Count One and Count Two of his *qui tam* Third Amended Complaint in the amount set forth above as to Defendant Ezukanma. Additionally, Relator is entitled to summary judgment under the False Claims Act on Count Two of the Third Amended Complaint as to Defendants Etindi, Parcon, and Gaines in the amounts set forth above.

RESPECTFULLY SUBMITTED

**LAW OFFICES OF JAMES R. TUCKER, P.C.**

**/s/ James R. Tucker**
**JAMES "RUSTY" TUCKER**
**LAW OFFICES OF JAMES R. TUCKER, P.C.**
**STATE BAR NO. 20272020**
**3100 DREXEL DRIVE**
**DALLAS, TX 75205**
**214-505-0097 (PHONE)**
**214-599-8874 (FACSIMILE)**
**rusty@rustytuckerlaw.com**

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2018, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing has been forwarded to all counsel of record by operation of the Court's electronic filing system. Additionally, service was sent to the following Defendants at the addresses listed below:

Myrna Parcon a/k/a Merna Parcon
Register Number: 49681-177
FMC CARSWELL FEDERAL MEDICAL CENTER
P.O. BOX 27137
FORT WORTH, TX  76127

*Via Certified Mail, Return Receipt Requested*

Dr. Noble Ezukanma
Register Number 49684-177
Federal Correctional Institution – Texarkana
4001 Leopard Drive, Texarkana, Texas 75501

*Via Certified Mail, Return Receipt Requested*

Mr. Ransome N. Etindi
Register Number 49719-177
FMC Fort Worth
Federal Medical Center
P.O. Box 15330
Fort Worth, Tx 76119

*Via Certified Mail, Return Receipt Requested*

Ben Gaines
Register Number 49683-177
Federal Correctional Institution – Texarkana
4001 Leopard Drive, Texarkana, Texas 75501

*Via Certified Mail, Return Receipt Requested*

 /s/ James R. Tucker
James R. Tucker

**RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT**                    Page 21

## CERTIFICATE OF CONFERENCE

Due to the fact that all four of the Defendants against whom this Motion is filed are currently incarcerated, Relator has been unable to confer with any of these Defendants. Accordingly, this matter is presented to the Court for a determination.

/s/ James R. Tucker
James R. Tucker